# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

MIGUEL MARTINEZ,                )
                                )
    Plaintiff,                  )
                                )
v.                              )  Case No. CV410-049
                                )
RYCARS CONSTRUCTION, LLC,       )
                                )
    Defendant.                  )

## ORDER

Plaintiff Miguel Martinez moves the Court to compel defendant Rycars Construction, LLC, to produce contractual data that, Martinez insists, will lead to the discovery of evidence helpful to his negligence-based personal injury claims against Rycars. Doc. 17. Rycars opposes. Doc. 19. For the purposes of his motion, the Court will accept plaintiff's factual allegations as true.

## I. BACKGROUND

Martinez was a Georgia Department of Human Resources (DHR) employee on July 31, 2008 when he performed maintenance work at the Georgia Regional Hospital in Savannah, Georgia. On that date, Rycars

was replacing a hospital roof under a contract with DHR. While using hydraulic lifts on the job, it applied non-standard, "rope and box" attachments to them. Rycars lent one to Martinez's supervisor, who told Martinez to get on it in order to cut some nearby tree limbs. While doing so, the rope holding the box to the lift broke and the box and Martinez dropped to the ground, rendering him a paraplegic. Doc. 1 (Complaint) ¶¶ 4-18; doc. 17 at 1-3. Martinez brought this negligence action against Rycars and served upon it Fed. R. Civ. P. 33 and 34 discovery. Upon Rycars's refusal to provide some of that requested discovery, plaintiff now moves for a compulsion order. Doc. 17.

## II. ANALYSIS

Those dissatisfied with Fed. R. Civ. P. 33(b) and 34(b) discovery responses may seek an order compelling disclosure. Fed. R. Civ. P. 37(a). Whether to grant it is within this Court's discretion. *Commercial Union Insurance Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir.1984); *Hernandez v. Wilsonart Int'l., Inc.*, 2010 WL 2653223 at * 1 (M.D. Fla. July 19, 2010). Information sought must be relevant. Fed. R. Civ. P. 26(b)(1).[1]

---

[1] Rule 26(b)(1) governs the scope of discovery in civil cases:

That, in turn, requires an examination of plaintiff's relevant legal claims. Martinez says that "[i]n regard to the lift which was involved in [his] injury, Rycars was the bailor of same and the [DHR] was the bailee."[2]

---

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). Courts "focus on the *actual claims* and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Rule 26(b)(1) (2000) (Amendment Advisory Committee's Note) (emphasis added).

[2] Those who "bail" equipment, for example, are charged with specific legal duties. As this Court explained:

> Generally, one creates a bailment and becomes a bailor by renting, leasing, or lending to, or storing personal property with, another. *See e.g.*, O.C.G.A. § 44-12-77; *Bunn v. Broadway Parking Center, Inc.*, 116 Ga.App. 85, 156 S.E.2d 464 (1967) (A stores his car in B's garage; A is the bailor and B is the bailee). Bailment is formally defined as "a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or the bailee or both and to dispose of the property in conformity with the purpose of the trust." O.C.G.A. § 44-12-40. Bailment takes many forms.

\* \* \* \*

> Two identifying badges are always present in bailment cases: (1) title to the

Doc. 1 (Complaint) ¶ 20.  As will be further explained below, it is to plaintiff's advantage to show a course of dealing which would lead a jury to conclude that Rycars's loan of the lift here constituted the level of consideration legally necessary to deem the lift's loan to be lucrative, not a gratuitous bailment.  A lucrative bailment imposes a higher legal duty than a gratuitous bailment on the bailor, and that affects the duty Rycars owed to Martinez.  Lucrative bailment requires a showing of consideration, while gratuitous bailment does not.

Martinez thus wants to show that Rycars received consideration from Lester Jump (in that Jump "repays" Rycars's favor by giving it a favorable performance evaluation, which helps Rycars get more DHR contracts), and this commercialized its loan of its lift to him, resulting in a lucrative bailment and higher legal duty to third parties like plaintiff. Amplifying on that duty, plaintiff thus asserts that

---

property does not shift (if it did, the property would be sold, not merely rented, leased or loaned); and (2) both the bailor and the bailee bear some duty of care toward another and, by extension, to third parties. Normally, the character of the bailment is to be determined by the contract of the parties to it.

*Apperson v. Belton Ind., Inc. v. Yangming Marine Transp. Corp.*, 1996 WL 906349, *3 (S.D. Ga. Dec. 12, 1996); *see also Owners Ins. Co. v. Smith Mechanical Contractors, Inc.*, 294 Ga. App. 754, 756-57 (2008).  The duty of care varies based on the type of bailment.  Examples of this are found in the case law discussed *infra*.

> [w]hen Rycars bailed the lift to the [DHR], Rycars knew that the [DHR] was going to use the lift to carry personnel into the air to cut tree limbs. Rycars knew that the attachment on the lift was not suited for that purpose because the attachment was not a manufactured attachment designed for that purpose but was simply a box and old rope used to tie the box or crate onto the prongs of the lift. As such, Rycars knew that the lift constituted a dangerous instrumentality and that same was dangerous for the purpose for which the [DHR] intended to use same.

*Id.* ¶ 21.

Rycars also allegedly "breached its implied [bailor] warranty that the lift was free from hidden defects, the implied warranty that the lift was fit for the purpose for which it was hired, and [its] warranty that the lift was free from patent defects when it bailed the lift and its attachment to the [DHR]." *Id.* ¶ 22.[3] These assertions bespeak a lucrative bailment.

To prove the lucrative bailment, Martinez wants information about all Rycars contracts with all other Georgia agencies for the last 10 years, though he surmises that there are only 4 years because Rycars has only been authorized to transact business in Georgia since 2006. Doc. 17 at 2, 16. This information is relevant, he contends, because (a) after each DHR construction job the DHR performance-rates contractors like

---

[3] Martinez pursues other recovery theories here that are not relevant. Doc. 1 (Complaint) ¶¶ 23-48 (Negligence, Duty to Warn, Strict Liability, etc.).

5

Rycars; (b) Lester Jump, the DHR supervisor who ordered plaintiff into the Rycars's lift "box" that failed, was one of two DHR employees who had to approve Rycars's work and had input in its evaluation; (c) Rycars thus had a commercial incentive to indulge Jump's request so that it could continue getting DHR contracts; (d) that "goodwill expense" (of lending equipment free of charge in the hope of getting future business) may be said to constitute consideration supporting a lucrative bailment; thus, (e) the "other contracts" may lead plaintiff to discover such "mutual benefit" to have occurred on Rycars's other jobs with the State of Georgia. Doc. 17 at 16-19; *see also id.* at 3 ("Rycars'[s] quest for Georgia jobs may explain why Rycars loaned the lift to Lester Jump."); *id.* at 18-19 ("This exact same kind of mutual benefit may have occurred on Rycars['s] other jobs for the State of Georgia, with those jobs leading to the job at Georgia Regional in Savannah. Plaintiff cannot make that determination without having information on these other jobs.").

To that end, plaintiff says that he has tried but is unable to obtain this contract data from the DHR. Rycars, meanwhile, is insisting that it only *gratuitously* bailed its lift to Jump that day, so there can be no

bailment duty for Martinez to exploit. Doc. 17 at 16-19. Seeking to punch a fatal hole through plaintiff's case, Rycars has tendered evidence to challenge him factually. An affidavit it has tendered, it claims, shows that it "did not receive any sort of evaluation from Lester Jump, or anyone else, regarding the job at issue, and never received any evaluations of any sort from the State of Georgia, the [DHR], or any other Georgia Agency or individual regarding the work it performed." Doc. 19 at 3.

Even at that, Rycars reminds, it has provided Martinez with a privilege log and nearly 3000 documents. *Id.* Likely 100,000 more documents would have to be searched for and examined to comply with plaintiff's pending discovery requests. *Id.* at 5. This expense is not justified, so Martinez's compulsion motion should be denied. *Id.* at 5-6. And, it also contends, Martinez has failed to satisfy his Fed. R. Civ. P. 26(b)(2)(C) burden to show that he cannot obtain the information from another source that is more convenient or less expensive. *Id.* at 21-22. Rycars thus concludes that "the discovery sought would be of no benefit whatsoever, because [Rycars] never received the type of evaluation [Martinez] alleges. Thus, under no theory could the information sought,

regarding entirely unrelated jobs, be construed as some sort of consideration." Doc. 19 at 6.

The issue is *not,* plaintiff replies, whether Rycars *"received"* an evaluation, but whether DHR *generated* them. He believes that by reviewing Rycars's DHR-Rycars contracts, as well as Georgia-Rycars contracts, he can unearth this information and thus establish a course of dealing showing that Rycars had a commercial incentive to do things like lend equipment to local state officials. Doc. 22. That, in turn, would establish the consideration that Martinez needs to lift his case from a gratuitous to a lucrative (i.e., consideration-based) bailment. *Id.*

To that end, plaintiff rebuts Rycars's showing: "As shown by the deposition of Janet Edenfield, the procurement officer for the contract involving Rycars at Georgia Regional Hospital in Savannah, Rycars was given an evaluation on this job and that evaluation is used as one of the two determining factors as to whether Rycars will get future jobs. Low bidders do get disqualified based upon those evaluations and jobs are given to higher bidders." Doc. 22 at 1-2. Put another way, reputation counts, and what state officials say about a company like Rycars counts

more. *Id.* at 3. Edenfield and Jump are part of that process. *Id.* at 3-4. And Jump approved change orders that impacted defendant's bottom line. *Id.* at 5. Jump also was part of the actual payment process. *Id.* at 5-6. Nor did he disagree with or disapprove a Rycars payment request during the job at issue in this case. *Id.* at 7. Both he and Edenfield completed a post-job evaluation on Rycars and sent it to the DHR's "State Financing Office." *Id.* "Rycars' generosity toward Lester Jump and the DHR helped to insure a good evaluation and future work. The same can be said about prior evaluations at jobs for the State of Georgia." *Id.* at 16.

As for Rycars's "burdensomeness" objection, Martinez replies that his actual discovery requests do not seek Rycars's

> entire files but mainly request a copy of each contract and a list of all of the projects. It is hard to believe that Defendant would have to read every page of every construction file to find the contracts. Plaintiff has also made it clear that Plaintiff does not want the entire contract, i.e. the project manual, but only the written job contract without the incorporated documents.

Doc. 22 at 8. Indeed, he points to the DHR/Rycars contract for the particular job at issue in this case and emphasizes that it is only 4 pages long. *Id.* "Presumably the other contracts are of similar size, especially since they are the same form contracts with the State of Georgia." *Id.* at

9

8-9. Too, plaintiff contends,

> [t]he cost and burden to Rycars is small because they already have a list of the 35 other jobs and simply have to pull the several page contracts and photocopy them. The burden for the Plaintiff is extremely difficult and unlikely to even succeed. Plaintiff does not even know which agencies Rycars has had jobs with so Plaintiff would have to make a request to every agency in the State of Georgia and those agencies would have to go on a fishing expedition to see what contracts that they have had with Rycars. In other words, without even the names of the jobs, those agencies would not even know what construction projects to look at or whether they even had a job with Rycars.

Doc. 22 at 9. And, since Rycars only received in 2006 its authority to transact business in Georgia, it "should know every job from recent memory." *Id.* at 9-10.

Finally, "[i]t is unknown whether Rycars loaned owner representatives equipment at these other Rycars' jobs. Previous substantially similar incidents would certainly help support the clear inference of why Rycars loaned equipment to the DHR in this case. Indeed, Janet Edenfield testified that Lester Jump never borrowed equipment from any other contractors. Those prior job evaluations helped lead to the job with the DHR for the Georgia Regional Hospital in Savannah, and the evaluation by the DHR for the job at Savannah could

10

lead to more Rycars jobs." *Id.* at 16-17.

Assuming plaintiff is correct that his document-intensive discovery request here is not particularly oppressive (likely far less than the 100,000 pages Rycars projects), this matter then turns on whether the bailment to Jump in fact was "gratuitous," since if that is the case then discovery into consideration past and present would be moot. The difficulty here, however, is that this case sits directly on the gratuitous-lucrative bailment dividing line found in Georgia law.

The obligations of the lucrative bailor are:

(1) To do no act to deprive the hirer of the use and enjoyment of the chattel during the period of the bailment;

(2) To keep the thing in suitable order and repair for the purposes of the bailment; and

(3) To warrant the right of possession and that the thing bailed is free from any secret fault rendering it unfit for the purposes for which it is hired.

O.C.G.A. § 44-12-63. "For breach of any of these obligations that proximately results in injury, the bailor is liable in tort." GA. LAW OF TORTS § 11-2 (*Rights and duties of bailor*) (2010); *see also Perton v. Motel Props., Inc.*, 230 Ga. App. 540, 540-41 (1998); *Prince v. Atlanta Coca-Cola*

*Bottling Co.*, 210 Ga. App. 108, 110 (1993). But

> "[w]here a bailment is purely gratuitous, and created for the exclusive benefit of the bailee, as where articles are loaned to another simply for his own use, without any reward or compensation being received from him by the lender, the bailor's only duty in respect of defects is to inform the bailee of any of which he is aware and which might make the use of the subject of the loan perilous to the bailee or to his servants. The ground of this obligation is that when a person lends he ought to confer a benefit, and not do a mischief. But the obligation of a mere lender goes no further than this, and he cannot therefore be made liable for not communicating anything which he did not in fact know, whether he ought to have known it or not."

*Butler v. Shirah*, 154 Ga. App. 111, 111 (1980) (quoting 8 AM. JUR. 2D BAILMENTS § 148); GA. LAW OF TORTS § 11-2); *see also Howell v. Amerson*, 116 Ga. App. 211, 211 (1967) (neither is a mere lender under a duty to examine the condition of the article before lending it).

Again, Martinez insists that Rycars owed him a duty of care as a bailer for hire, with "payment" (hence, legal consideration) being the "brownie points" it would earn with state officials (who form part of the state's contract-awarding chain) in need of a "freebie" (e.g., the use of a lift here). Rycars insists it only gratuitously bailed its lift. Sometimes

> [w]hether a bailment is gratuitous has on occasion presented an issue for the factfinder. *See Lakeside Ford v. White*, 159 Ga. App. 182, 283 S.E.2d 47. Normally, however, "the character of a

> particular bailment, whether gratuitous or not, is to be determined by the contract between the parties to it." *Merchants Nat. Bank of Savannah v. Guilmartin*, 88 Ga. 797, 804(2), 15 S.E. 831. In determining whether a bailment is gratuitous or one for hire, "the possibility of *some undisclosed benefit is not enough* to render the bailment one for hire; there must be an understanding or arrangement, express or implied, between the parties, whereby the bailee has received or has a right to expect and demand something for his benefit. [Cit.] Casual or incidental benefits which he would have to surrender at the will of the bailor, do not amount to a consideration. There must be a compensation of some sort actually contemplated in the contract and bargained away by the bailor." *Id.* at 804-805(2), 15 S.E. 831. *Absent an agreement or exchange of promises* for the lending of a chattel . . . which is supported by consideration, award, or compensation, the most that may be inferred from the act of lending is that the bailor had some self-serving motive; a showing of bare motive, however, does *not* establish that consideration, award, or compensation necessary for a bailment for hire. *See* [*Butler v. Shirah*, 154 Ga. App. 111, 112 (1980)].

*Prince*, 210 Ga. App. at 111 (emphasis added). The *Prince* court relied upon the *Butler* case, where two farmers routinely lent each other equipment in the obvious expectation of maintaining that reciprocity so they could thus be spared, duplicate-equipment ownership costs:

> In the face of the specific evidence indicating that there is no agreement or exchange of promises under which this lending of equipment occurs, the most that may be inferred is that the farms involved in such transactions have a motive in lending their equipment, this motive being the hope that their neighbors will reciprocate when needed. Such a motive, however, is *not* consideration.

13

*Butler*, 154 Ga. App. at 112 (emphasis added). In *Butler*, a loaned tractor suffered a wheel loss, causing a fatal injury. Liability was thus affected by whether the loaned tractor was a lucrative or gratuitous bailment. But nothing beyond a gratuitous bailment was in play there, even though each party's obvious expectation (exchanged reciprocal lending benefits) may technically be thought to constitute consideration. *Id.* The bailor thus was summarily ruled not liable. *Id.* at 112.

What may thought of as a more "immediate and tangible consideration line" was therefore drawn in those cases. That line resurfaced in *Prince*, where a soft drink company loaned a display wagon to a grocer and was ruled only a gratuitous bailor. *Prince*, 210 Ga. App. at 110 (soft drink company that merely provided its special events wagon to store at store's request, for no charge and without involvement of company personnel in operation of wagon, was gratuitous bailor and had no legal duty to maintain areas surrounding wagon, particularly after wagon was delivered and placed under store's control, and could not be held liable for store customer's injury when she slipped and fell in pool of water near wagon); *cf. Meriwether County v. Creamer*, 146 Ga. App. 651,

655 (1978) (county loaned a fire truck to a community civil defense unit for use during the unit's fund-raising auction; during a drive, the truck flipped over, killing the plaintiffs' mother; held, the bailment was not gratuitous because "the use of the truck . . . was for the benefit of the county to develop civil defense units, including the [community's] civil defense unit.").

Concededly, the *Prince* court's interpretation is fairly strict. Loaning equipment with the commercial expectation of downwind sales is a fairly common practice, and not just "good neighborliness." *Prince*, however, has not been overruled. And it is profitably compared to *Colony Ins. Co. v. Coca-Cola Co.*, 239 F.R.D. 666 (N.D. Ga. 2007), where a restaurant fire was allegedly caused by an electrical failure in the power supply of a soda fountain dispenser owned by the Coca-Cola Company. *Id.* at 668. Insisting that it was only a gratuitous bailor, Coca-Cola leased the dispenser to the restaurant, Jade Palace, free of charge. Nor did Jade Palace pay Coca-Cola a percentage of its soda sales. *Id.* at 669.

But, Jade Palace argued, "it was obligated to purchase syrup from Coca-Cola, [so] the restaurant knew it was paying for the soda dispensing

equipment through the purchase of Coca-Cola syrup." *Id.* at 678. The court concluded that there existed a fact issue on just what type of bailment that was:

> Here, Defendant leases the soda dispensing equipment at no cost to the restaurant because the restaurant then purchases Coca-Cola syrup for use in the equipment. The fact that the syrup is purchased through a third-party vendor does not lessen the benefit of the sale to Defendant, as Defendant Coca-Cola is the sole supplier of Coca-Cola syrup. Similarly, the fact that the Jade Palace restaurant did not pay to Defendant any percentage of its soda sales does not change the fact that Defendant benefitted in the form of increased syrup sales from soda dispensed at Jade Palace. Thus, the court finds that this situation is more akin to *Creamer* than *Butler*, where the benefits of good-neighborliness are less tangible, or *Prince*, where a one-time loan of a [special events wagon] was not expected to lead to a stream of purchases of syrup.

*Id.* at 679. There thus existed enough facts to *possibly* impose the lucrative-bailment duty upon Coca-Cola, as opposed to a mere gratuitous-bailment duty. Again, an "immediate and tangible consideration" rationale can be seen there. To summarize: If "A" bails equipment to "B" under a reasonably immediate expectation of a tangible benefit (e.g., "B" will, reasonably soon if not immediately, buy some other good or service from "A"), then the bailment may be said to be for consideration and thus lucrative. But if the loan is incidental and casual,

16

such as where a neighbor lends a tool to another neighbor, or one business casually or at just sporadically lends a piece of equipment to another, then the bailment will remain gratuitous.

Here there is neither alleged nor shown to have existed even an intermittent course of dealing, where a discernible if not steady flow of "freebies" can be traced from a tangible good vendor or service provider. Nor was there a one-time loan with the expectation of an immediate, reciprocal benefit. A reasonable jury could infer that Rycars had an incentive to "be nice" to Lester Jump, who was in a position to adversely rate its job performance. But that expectation could not reasonably be said to rise above the "self-serving motive" that the *Prince* court said is simply not enough. At most Martinez speculates that an informal course of dealing (casual, construction-site equipment loans) *may* exist, and if enough of these instances are found, they may be traced to, ultimately, a stream of them which, a jury may conclude, were numerous enough to constitute consideration to support a lucrative-bailment recovery theory. Plaintiff thus wants to fish for such instances among Rycars's contract files. To mitigate the discovery burden, he does not want all of the

contract specification sheets, but apparently enough names so that he can troll those waters (presumably by questioning those contracting parties) for other equipment-loan examples.

All of that, however, is premised on speculation -- on the presupposition that (a) casual, on-site equipment loans like what happened here happens often enough to support a feeling of goodwill among local-site, state officials like Lester Jump; and (b) such loans are made so often that knowledge of it naturally coalesces and thus is cross-communicated amongst evaluating state officials; such that (c) it constitutes *de facto* consideration rising beyond the simple, "self serving" motive dividing line drawn in *Prince*. 210 Ga. App. at 111.

Yet plaintiff provides no indication of that, only his sheer -- though not outlandish -- speculation that it *might* occur, and from this *one* instance. On balance, that makes Martinez's discovery requests too tenuous and speculative to continue. *See Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("[w]hile Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into

actions or past wrongdoing not related to the alleged claims or defenses.").

His motion to compel, then, though not frivolous, is **DENIED**.   Doc. 17.[4]

**SO ORDERED** this 3rd day of August, 2010.

_/s/ JM Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA

---

[4]   While Martinez does invoke other recovery theories, it might do the parties well to seek a stay of this case and litigate what appears to be his prime recovery theory -- prior to proceeding with more discovery.  See Smith v. United States, 877 F.2d 40, 41 (11th Cir. 1989) (widow of a space shuttle astronaut killed in Challenger explosion was not entitled to discovery against the United States because her negligence action was barred as a matter of law); McCabe v. Foley, 233 F.R.D. 683, 687 (M.D. Fla. 2006); Yerk v. People for the Ethical Treatment of Animals, 2010 WL 1730754 at * 1 (M.D. Fla. Apr. 28, 2010); Fed. R. Civ. P. 26(c).