MIGUEL MARTINEZ, )
)
    Plaintiff, )
)
v. )     CASE NO. CV410-049
)
RYCARS CONSTRUCTION, LLC, )
)
    Defendant. )
)

## O R D E R

Before the Court is Defendant Rycars Construction's
("Rycars") Motion for Summary Judgment. (Doc. 54.) For the
following reasons, Defendant's motion is **GRANTED IN PART** and
**DENIED IN PART**. Plaintiff may proceed with his claim based
on the supply of chattel for dangerous use. (Doc. 1 at 20-
21.) However, Plaintiff's remaining claims, including his
claim for punitive damages, are **DISMISSED**.

### BACKGROUND

Defendant is a roofing company that historically
handles approximately twenty roofing projects annually
throughout multiple states. (Doc. 85 at 2.) When
performing roofing work, Defendant commonly uses a three-
sided wooden box attached to a boom lift to raise and lower
construction equipment, materials, and debris between the

1

ground and the roof. (Id. at 2-3.) Generally, Defendant's supervisory employees were aware that it is improper to use the wooden box attachment to raise and lower individuals because the box was not specifically designed to attach to the boom lift, and lacked the safety features required to raise individuals off the ground. (Id. at 3-4.)

In 2008, Defendant was contracted by the Georgia Department of Human Resources ("GDHR") to complete a large roofing construction project at Georgia Regional Hospital ("GRH") in Savannah, Georgia. (Id. at 5.) While working on the project, Defendant utilized a boom lift with a wooden box attachment. (Id.) According to Plaintiff, Defendant's site supervisor, Mr. Lance Catchot, routinely allowed subcontractors to raise and lower their employees using the boom lift and wooden box. (Id. at 8.) In addition, Plaintiff alleges both that Mr. Catchot had personally stood in and performed work out of a wooden box attachment, and that Mr. Catchot allowed the subcontractor's employees to do the same. (Id.)

While Defendant was completing the roofing contract, the director of human resources at GRH, Mr. Lester Jump, asked Mr. Catchot to borrow the boom lift to pick up some fallen tree limbs and remove them to larger piles. (Id. at

2

5-6.) After obtaining permission from his supervisor, Mr. Catchot loaned the boom lift to Mr. Jump. (Id. at 6.) Mr. Catchot provided Mr. Jump no warnings with respect to the loaned equipment.

In July of 2008, Mr. Jump again asked to borrow the boom lift, this time with the wooden box attachment. (Id.) According to Plaintiff, Mr. Jump informed Mr. Catchot that he would be using the boom lift and wooden box to cut and remove damaged limbs from trees. (Id.) Similar to before, Mr. Catchot allowed Mr. Jump to borrow the equipment, but did not provide any warnings or instructions concerning how it should be used. (Id.) According to Defendant, Mr. Catchot assumed that Mr. Jump would be operating the equipment in the same manner as when he previously borrowed it—using the forks of the boom lift to pull damaged limbs from trees. (Doc. 91 at 5-6.) Mr. Catchot maintains he was unaware that Mr. Jump intended to remove the tree limbs by placing Plaintiff in the wooden box and raising him up to cut the limbs with a chainsaw. (Id.)

After receiving permission, Mr. Jump retrieved the boom lift from Defendant's on-site equipment yard. (Doc. 85 at 11.) The wooden box was already on the lift's forks. (Id.) However, the ropes typically used to secure the box to the

3

lift were lying on the back of the box. (Id.) Mr. Jump had previously observed Defendant's employees tie the box to the lift. (Id. at 12.) So, he secured the box to the lift with the ropes in the same manner. (Id.)

With the box secured to the lift, Mr. Jump directed Plaintiff, an employee at GRH, to enter the box with a chainsaw. (Id.) Mr. Jump then raised the box in order to allow Plaintiff to cut some damaged limbs. (Id.) After Plaintiff finished cutting a third tree limb, the wooden box fell from the lift. (Id.) As a result of the fall, Plaintiff suffered severe injuries. (Id.)

Based on the injuries he received from the fall, Plaintiff filed a nine-count complaint in the State Court of Chatham County, Georgia on February 8, 2010. (Doc. 1, Ex. A.) Defendant timely removed the case to this Court on February 26, 2010. (Doc. 1.) Because six of Plaintiff's claims have either been abandoned[1] or can be grouped into the same cause of action,[2] there are only three principal claims left for the Court's consideration.

---

[1] In his response to Defendant's Motion for Summary Judgment, Plaintiff withdrew his claims for strict liability, breach of warranty, and breach of professional duty. (Doc. 85 at 39-40, 73.)
[2] Because of Plaintiff's concession that the bailment was gratuitous (Doc. 85 at 17), Plaintiff's claims for negligence, duty to warn, and bailment are only viable to

4

First, Plaintiff alleges that Defendant, a gratuitous bailor,[3] was negligent for failing to warn Plaintiff's employer of known defects in the equipment that made it perilous for the use intended by Plaintiff's employer. (Doc. 1, Ex. A ¶¶ 20-27.) Second, Plaintiff claims to be an intended third-party beneficiary of Defendant's contract with GDHR. (Id.) Plaintiff argues that Defendant breached its duty under this contract to prevent accidents on the job site and to ensure the safety of the public, tenants, and occupants of GRH. (Id. ¶ 39.) Third, Plaintiff maintains that Defendant, as a supplier of chattels for dangerous use, breached its duty to inform Plaintiff's employer that the equipment was in a dangerous condition. (Id. ¶¶ 45-46.)

On October 19, 2010, Defendant filed a Motion for Summary Judgment. (Doc. 54.) In its motion, Defendant argues that, as a gratuitous bailor, its only duty was to warn of known defects in the equipment. (Id. at 15-22.) Defendant contends that it cannot be liable for Plaintiff's injuries because it had no actual knowledge of any defect in

the extent Defendant would be liable under the law governing gratuitous bailments. See infra Analysis Part II. Therefore, the Court need not individually address these claims. Similarly, Plaintiff's duty to warn claim is also considered in concert with his claim for supply of chattels for dangerous use. See infra Analysis Part IV.

[3] As noted earlier, Plaintiff concedes that the bailment at issue here was purely gratuitous. (Doc. 85 at 17.)

the loaned equipment. (Doc. 54 at 23.) Next, Defendant maintains that Plaintiff was not a third party beneficiary to its roofing contract with GDHR. (Id. at 32-36.) According to Defendant, the contract does not confer a direct, clear, and sufficiently specific benefit upon Plaintiff to give him standing to sue in the event that Defendant breaches the contract. (Id. at 35.) Also, Defendant reasons that it is not liable because Plaintiff's injury occurred outside of the scope of Defendant's work under the contract. (Id. at 35-36.) Finally, Defendant argues that it is not liable for the supply of chattel for dangerous use because it was unaware that Mr. Jump intended to use the equipment in such a dangerous manner. (Id. at 37-38.)

Defendant also raised two affirmative defenses in its motion. First, Defendant claims that Plaintiff assumed the risk of injury. (Id. at 40-47.) Second, Defendant reasons that Plaintiff failed to exercise due care for his own safety. (Id. at 47-50.) In addition, Defendant requested summary judgment with respect to Plaintiff's claim for punitive damages. (Id. at 39.)

On November 12, 2010, Plaintiff filed his response to Defendant's Motion for Summary Judgment, elaborating upon

its arguments in the original complaint and responding to the affirmative defenses. (Doc. 85) Regarding Defendant's position that Plaintiff assumed the risk of injury, Plaintiff contends that he had no awareness of the specific risk that caused his injury, that his prior training and experiences did not prepare him to fully appreciate the inherent danger involved with being raised by a boom lift while in an attached wooden box, and that he did not voluntarily encounter the dangerous situation because he entered the wooden box at the request of his employer. (Doc. 85 at 50-58.) As for Defendant's claim that Plaintiff failed to exercise due care for his own safety, Plaintiff responds simply that such determination is for a jury and is not appropriately made on summary judgment. (Doc. 85 at 52.)

**ANALYSIS**

I.   SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the

nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. GRATUITOUS BAILMENT

In its Motion for Summary Judgment, Defendant argues that a gratuitous bailor's only duty is to warn the bailee of defects of which the bailor is aware. (Doc. 54 at 18.) Defendant contends that its representative, Mr. Catchot, had no duty to warn Mr. Jump that the equipment was defective for raising personnel because Mr. Catchot did not know Mr. Jump intended to use the equipment in that manner. (Doc. 54

9

at 18.) In response, Plaintiff argues that Mr. Catchot knew how Mr. Jump intended to use the equipment, that such use would be dangerous, and that Mr. Jump was not aware of that danger. (Doc. 85 at 39.) This knowledge, Plaintiff reasons, obliged Defendant to warn of defects in the bailed equipment that made it unsuitable for Mr. Jump's intended use. (Doc. 85 at 35.)

In Georgia, a gratuitous bailor is charged with a lesser duty to the bailee than a bailor for hire. While a bailor for hire must "warrant . . . that the thing bailed is free from any secret fault rendering it unfit for the purposes for which it is hired," O.C.G.A. § 44-12-63, a gratuitous bailor must only warn " 'of defects of which he is aware and which might make the subject of the bailment perilous to the bailee or to his servants' " Howell v. Amerson, 116 Ga. App. 211, 211, 156 S.E.2d 370, 371 (1967) (quoting 8 Am. Jur. 2d Bailments § 1043 (2011)). The rationale underlying this duty is that " 'when a person lends, he ought to confer a benefit and not do mischief.' " Id.

Georgia case law makes plain that a gratuitous bailor is only liable where he has actual knowledge of defects that make the bailed property hazardous in light of the purpose

10

for which it was bailed. Prince v. Atlanta Coca-Cola Bottling Co., 210 Ga. App. 108, 111, 435 S.E.2d 482, 485 (1993) (" '[A] bailor intrusting a dangerous article to his bailee, knowing that it will be used in such a manner as to endanger persons and property, is liable for any injury which . . . he could have foreseen.' " (quoting 8 C.J.S. Bailments § 97 (2011))); Howell, 116 Ga. App. at 212, 156 S.E.2d at 371 ("[A mere lender] cannot be liable for not communicating anything which he did not in fact know, whether he ought to have known it or not."). Implicit in this rule is the principle that, in order to actually know whether a defect in bailed property renders it hazardous for the purpose of the bailment, a bailor must actually know of the way in which the bailee intends to use it.

Plaintiff's negligent bailment claim, therefore, turns on whether Defendant's representative, Mr. Catchot, both actually knew that Mr. Jump intended to use the equipment for raising personnel, and actually knew that defects in the equipment made such use dangerous. Both parties agree that Mr. Jump indicated to Mr. Catchot that he was borrowing the lift and box to cut tree limbs. (Doc. 54 at 8; Doc. 85 at 6.) From the record, however, it appears that Mr. Jump

11

never specifically mentioned an intention to put Plaintiff in the box and to raise him off the ground.

In attempting to establish that Defendant knew how the bailed equipment was to be used, Plaintiff does not contend that Defendant was actually aware of Mr. Jump's intention to use the equipment to lift personnel. Rather, Plaintiff maintains that Mr. Jump's decision to put him in the box to cut tree limbs was foreseeable and expected. (Doc. 85 at 46.) Plaintiff relies upon Mr. Catchot's statement that he did not know how the lift could have been used to cut limbs without a person in the box, as the forks on the lift do not cut or grab limbs, to support Plaintiff's proposition that Mr. Catchot should have known Mr. Jump intended to use the lift and box to raise a person into the air to cut tree limbs. (Doc. 85 at 33.) According to Plaintiff, this constructive knowledge of how Mr. Jump intended to use the bailed equipment was sufficient to impart upon Defendant a duty to warn of the defects making such use dangerous.

To establish Defendant knew of defects in the equipment that made it inherently dangerous for the use Mr. Jump intended, Plaintiff proceeds upon something akin to a negligence per se theory. (Doc. 85 at 21-24.) In this regard, Plaintiff argues that Defendant knew raising people

via the forks on the lift without a specially manufactured personnel carrier violated regulations established by the Occupational Safety and Health Administration ("OSHA"). (Id. at 23.) Plaintiff reasons, therefore, that it can be assumed Defendant knew the use of the lift and box without such a personnel carrier was dangerous because Defendant knew such use would violate OSHA regulations. (Doc. 85 at 23.) As a result, Plaintiff concludes Defendant was negligent for failing to warn Mr. Jump of the defects in the equipment that both made it dangerous for its intended use and, ultimately, resulted in Plaintiff's injuries.

After reviewing the applicable case law in Georgia, the Court concludes that Plaintiff has failed to establish both essential components of this claim. First, Plaintiff has presented no evidence establishing that Defendant actually knew how Mr. Jump intended to use the bailed equipment. Plaintiff contends only that Mr. Catchot should have known how Mr. Jump intended to use the lift and box. (Doc. 85 at 46.) This, however, is insufficient to establish Defendant's actual knowledge of the purpose of the bailment, which Georgia law requires. See Prince, 210 Ga. App. at 110-11, 435 S.E.2d at 485; Butler v. Shirah, 154 Ga. App.

13

111, 112, 267 S.E.2d 647, 649 (1980); Howell, 116 Ga. App. at 211, 156 S.E.2d at 371.

Next, Plaintiff has presented no evidence that Defendant was actually aware of defects in the equipment that made it dangerous for raising personnel, also essential to establishing that Defendant had a duty to warn against such use. On this issue, the Court finds the Georgia Court of Appeal's decision in Howell instructive. In that case, the defendant loaned an electric drill to the plaintiff, knowing of its propensity to shock its user. Id. at 211, 156 S.E.2d at 371. Before loaning the drill, the defendant proceeded to test it prior to handing it over to the plaintiff, assuring him the drill was safe to use because it had not shocked him during the test. Id. In granting the defendant summary judgment, the Georgia Court of Appeals observed that a bailor "cannot be made liable for not communicating anything which he did not in fact know." Id. (emphasis added). Because the defendant in Howell tested the drill prior to the bailment, the results of which led him to believe that the drill was safe, the court found that the defendant was not actually aware the drill had a defect that could cause a fatal shock. Id. The court concluded,

therefore, that the defendant could not be held liable because he possessed no actual knowledge of the defect. Id.

Based on the court's reasoning in Howell, even if Defendant in this case knew that Mr. Jump's intended use of the bailed equipment was to place Plaintiff in the three-sided box and to lift him into the air, Defendant had no reason to know the equipment had defects that made such use dangerous. Indeed, Plaintiff argues that GRH employees observed Defendant use the lift and box in this manner on previous occasions without incident (Doc. 85 at 8), which is analogous to the defendant in Howell testing the drill for safety before loaning it to the plaintiff. In other words, Plaintiff's own allegations confirm that even if Defendant knew how Mr. Jump intended to use the bailed equipment, Defendant still lacked actual knowledge of any defect in the equipment that would render it unreasonably dangerous for that use because Defendant had previously used it in the same manner without any incident. As discussed above, Defendant cannot be held liable absent any actual knowledge of the defect.

Furthermore, Plaintiff's argument that Defendant had knowledge that the lift and box were defective for the purpose of lifting personnel simply because Mr. Catchot was,

15

or should have been, aware that such use violated OSHA regulations is untenable. Here, Plaintiff confuses actual knowledge, defined as "[d]irect and clear knowledge," Black's Law Dictionary 888 (8th ed. 2004), with constructive knowledge, defined as "[k]nowledge that . . . is attributed by law." Id. Defendant's knowledge that such use would violate OSHA regulations imparts, at best, constructive knowledge that the equipment was defective for that use, not actual knowledge. For actual knowledge in the context of a gratuitous bailment, Defendant must know of a specific defect in the bailed item that renders it dangerous for its intended use. Plaintiff's attempt to establish that Defendant possessed that level of knowledge by reference to OSHA regulations is inadequate. Because Plaintiff has failed to present any evidence that Defendant knew of either the defect in the lift and box, or Mr. Jump's intended use of the equipment, Defendant's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's claim for negligent bailment.[4]

---

[4] As previously discussed, supra note 2, Plaintiff's claims for negligence, duty to warn, and bailment are all governed by the law concerning gratuitous bailments. Therefore, Defendant is also entitled to summary judgment on these claims.

16

## III. PLAINTIFF'S STATUS AS THIRD PARTY BENEFICIARY TO THE ROOFING CONTRACT

As an alternative theory of liability, Plaintiff contends that Defendant breached its general obligations under its roofing contract with GDHR, of which Plaintiff claims to be a third-party beneficiary.[5]  (Doc. 85 at 59.) Plaintiff argues that the contract imposed upon Defendant a duty to protect the general public from any hazards arising in the course of Defendant's work at GRH.  Plaintiff reasons that his status as a member of the general public entitles him to recovery as a beneficiary of the contract.

According to Plaintiff, Defendant's loan of the equipment fell within the scope of its roofing work for GDHR because it was made "as a result of Rycars [sic] performance of the contract."  (Doc. 85 at 71-72.)  By this, Plaintiff

---

[5]    Two contract provisions in particular are relevant to Plaintiff's claim that Defendant's contractual obligations inured to his benefit.    Section D-12 (b) of the Project Manual, which was incorporated into the contract, states that the "Contractor alone shall be responsible for the safety, efficiency, and adequacy of his plant, appliances, and methods, and for any damage that may result from their improper construction, maintenance, or operations." (Doc 85 at 60.)    Section 3.02A of the contract, entitled "Protection of Personnel," requires the contractor to take all "necessary precautions to prevent injury to the public [and] occupants," defining the latter as "all persons not employed by the Contractor or sub-contractor." (Id. at 62.)

implies that the loan was not entirely gratuitous,[6] but was motivated by Defendant's attempt to secure Mr. Jump's approval of requests for payment, change orders, and additional time for completion of the work. (Doc. 85 at 72.) To establish that Defendant's alleged negligent bailment violated its contractual duties, Plaintiff thus relies upon the loose proposition that Defendant loaned the lift to Mr. Jump in furtherance of its performance pursuant to the contract.

A contract should be construed by examining the agreement in its entirety, not merely by examining isolated clauses and provisions. Mountain Aire Realty, Inc. v. Birdie White Enters., Inc., 265 Ga. App. 366, 368, 593 S.E.2d 900, 902 (2004). Where the language of a contract is clear and unambiguous and capable of only one reasonable interpretation, construction of a contract is a matter of law reserved for the trial court at the summary judgment stage. Amstadter v. Liberty Healthcare Corp., 233 Ga. App. 240, 242, 503 S.E.2d 877, 880 (1998). After careful consideration of the whole contract between Defendant and GDHR, the Court concludes that its terms can only be

---

[6] The Court finds this argument as odd, considering that Plaintiff concedes the bailment was gratuitous earlier in his brief. (Doc. 85 at 17.)

reasonably construed as creating liability for injuries or property damage done in the course of Defendant's efforts in completing the roofing work. The contract neither obliges Defendant to lend equipment to GRH nor holds Defendant responsible for ensuring the safety of its equipment for others' use.

For example, Plaintiff cites Section 3.02A, "Protection of Personnel," as the source of Defendant's general obligation to prevent injuries to the "public" and "occupants" of Georgia Regional. This provision appears in a part of the contract entitled "Execution," suggesting that its guidelines pertain specifically to Defendant's performance of the roofing work at Georgia Regional. This "Protection of Personnel" provision appears in concert with numerous other specifications that set guidelines for Defendant's "execution of the work." (Doc. 23, Attach. 9 at 6.) The application of the Project Manual provisions is likewise limited to Defendant's work under the contract. Given Plaintiff's concession that the bailment of the lift and box was gratuitous (Doc. 85 at 71-72) and not done in furtherance of or in consideration for Defendant's contractual performance, the Court finds his argument that the loan was somehow encompassed in Defendant's obligations

under the contract to be without merit.  Because Plaintiff has presented no evidence that Defendant, in bailing the equipment, breached its contractual duties, Plaintiff is not entitled to recover under the contract.

Even if the Court accepts the proposition that Defendant breached its contractual duties, the Court finds that the designation of Plaintiff as a third-party beneficiary to this contract would make the scope of covered persons under the cited provisions unreasonably broad. Georgia law requires that "in order for a party to have standing as a third-party beneficiary under a contract, it must clearly appear that one party to the contract promised another party to the contract to render some performance to the nonparty to the contract." Vaughn, Coltrane, & Assocs. v. Van Horn Constr., Inc., 254 Ga. App. 693, 694, 563 S.E.2d 548, 549 (2002).  Non-parties to a contract cannot claim third-party beneficiary status if they are members of an unreasonably broad group of beneficiaries.  Miree v. United States, 242 Ga. 126, 135-36, 249 S.E.2d 573, 579-80 (1978).

Here, the roofing contract does not specifically designate either Plaintiff, or a limited group to which Plaintiff is a member, as an intended beneficiary of the contract.  Plaintiff argues that the contract provides for

20

the protection of occupants, a specific group of persons listed in the contract to which he belongs. (Doc. 85 at 70.) However, the contract always refers to both the public and occupants when discussing the protection of personnel, using both terms in an attempt to provide protection for as many people as possible. Indeed, a review of the contract reveals no intention to impart upon occupants any benefits above that those that it gives to the general public. Such a wide net is insufficiently specific to grant Plaintiff status as a third-party beneficiary to the contract. See Van Horne, 254 Ga. App. at 694, 563 S.E.2d at 549; Miree, 242 Ga. at 135-36, 249 S.E.2d. at 579-80.

Plaintiff cites Plantation Pipe Line Co. v. 3-D Excavators, Inc., 160 Ga. App. 756, 287 S.E.2d 102 (1981), for the proposition that a member of the general public can recover as a third-party beneficiary to a contract in which one party agrees to compensate non-parties for injuries arising from its performance of the contract. (Doc. 85 at 68.) In 3-D Excavators, the provisions giving rise to the contractor's liability stated that the contractor would repair or make good "any damage to existing structures or utilities at no expense to the Owner," DeKalb County, Georgia. Id. at 757, 287 S.E.2d at 103. The defendant

21

further assumed responsibility for all claims arising "in connection with the performance of [the] contract" and for "conditions created . . . or arising out of . . . work performed under the contract." Id. at 757-58, 287 S.E.2d at 104. The defendant damaged the plaintiff's pipelines in the course of performing the excavation work that was the subject of its contract with DeKalb County. The court concluded that the plaintiff was an intended beneficiary of the contract because of the contract's explicit provision that the defendant would pay damages arising from its work under the contract and because the plaintiff was not part of an unreasonably broad group of beneficiaries.

However, the court's reasoning in 3-D Excavators is inapplicable to this case. First, the damage done to the plaintiff's pipes in 3-D Excavators was a direct result of the defendant's work under the contract—excavating. In contrast, for the reasons stated above, the unfortunate injury sustained by Plaintiff in this case cannot be attributed to Defendant's work under its contract—roofing. Second, the plaintiff in 3-D Excavators could be identified as a beneficiary to the contract because of his obvious relationship to the subject matter of the hold harmless provision—existing structures and utilities. As an owner of

a utility in proximity to the construction work, the court found that the plaintiff could be "reasonably afforded the contractual protection incorporated in the contract in question." Id. at 758, 287 S.E.2d at 105. The court concluded that the contractual language did not place plaintiff in an unreasonably broad group of beneficiaries who would, as a result, have no standing under such contracts. Id. at 758, 287 S.E.2d at 104-05. In contrast, Plaintiff's membership in the very broad category of "the public and occupants" is insufficient to give him standing to sue under the roofing contract. Furthermore, nothing in the contract creates a special duty in Defendant to compensate for injuries to GRH's employees that occurred as a result of work performed by others outside the scope of the contract.

Plaintiff also claims status as a third-party beneficiary to the roofing contract by pointing to Section 324A of the Restatement (Second) of Torts.[7]  (Doc. 85 at 66.)

---

[7] Section 324A of the Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to

The Georgia Supreme Court adopted this Restatement rule in Huggins v. Aetna Cas. & Sur. Co., 245 Ga. 248, 264 S.E.2d 191 (1980), as a means by which a party may establish liability for the negligent performance of an undertaking. Relying on this Restatement provision, Plaintiff argues that Defendant is liable for his injuries because Defendant, as part of the contract, undertook to ensure the safety of GRH's premises during the performance of the contract. (Doc. 85 at 66.)

To establish Defendant's liability to Plaintiff as a third-party contract beneficiary under Restatement Section 324A, Plaintiff would have to first prove that Defendant's agreement to maintain a safe workplace was a contractual undertaking and that Defendant had reason to recognize the services it contracted to perform were necessary for Plaintiff's protection. Plaintiff would then have to show any one of the following: that the loan of the lift and box constituted a failure to exercise reasonable care that

---

exercise     reasonable     care     to     protect     his
undertaking, if
(a)  his  failure  to  exercise  reasonable  care
increases the risk of such harm, or
(b)  he has undertaken to perform a duty owed by
the other to the third person, or
(c)  the harm is suffered because of reliance of
the   other   or   the   third   person   upon   the
undertaking.

24

increased the risk of harm to Plaintiff; that Defendant undertook to perform a duty owed by Plaintiff's employer to Plaintiff; or that Plaintiff's injury resulted from either Mr. Jump's or Plaintiff's reliance upon this undertaking. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that he has not presented sufficient evidence to establish any of the above. Therefore, he cannot recover as a third-party beneficiary to the contract between Defendant and GDHR under Restatement Section 324A.

First, Plaintiff has not established that Defendant failed to exercise reasonable care under Restatement Section 324A(a). To establish liability, Plaintiff would have to establish that Defendant failed to use reasonable care, which in this case would be predicated on the bailment of the equipment. As discussed above, however, Defendant bears no liability based on its gratuitous bailment of the equipment. See supra Part II.

Second, Plaintiff's theory of liability under Restatement Section 324(b) does not survive summary judgment because Plaintiff has not established that Defendant completely undertook to perform duties—maintaining safe equipment and preventing injuries—originally owed by

Plaintiff's employer. Under Georgia law, liability under Section 324A(b) attaches "only when the alleged tortfeasor's performance is to be substituted completely for that of the party on whose behalf the undertaking is carried out." Huggins v. Standard Fire Ins. Co., 166 Ga. App. 441, 442, 304 S.E.2d 397, 398 (1983) (interpreting the official comment to subparagraph (b) of the Restatement). Such a showing here would amount to proving that, because of Defendant's contractual undertaking to ensure Plaintiff's safety throughout its work on the roofing contract, Plaintiff and his employer completely gave up responsibility for their own protection, a result which defies logic and is contrary to the evidence in the record.

Third, Plaintiff has failed to establish liability under Section 324A(c) because he has shown neither that Defendant realized his undertaking to render services under the roofing contract was necessary for Plaintiff's protection, see Brown v. All-Tech Inv. Grp., Inc., 265 Ga. App. 889, 898-99, 595 S.E.2d 517, 524-25 (2003), nor that Plaintiff or his employer relied upon Defendant's competent performance of the undertaking to provide for his safety, see Smith v. Universal Underwriters Ins. Co., 732 F.2d 129, 131 (11th Cir. 1984) ("Georgia law . . . require[s] that an

26

employer's [or employee's] reliance be shown by evidence of change in position. We [are] unable to find employer reliance where there was no indication that the employer had neglected or reduced its own safety program because of the carrier's [inspections]."). Plaintiff has produced no evidence to indicate that he failed to take steps for his own protection in reliance upon Defendant's contractual undertaking to ensure safe conditions at the GRH jobsite. Furthermore, Plaintiff has not established that his employer failed to adhere to its own safety procedures because of Defendant's alleged contractual undertaking.

For the reasons discussed above, the Court concludes that Plaintiff has not offered sufficient evidence to establish either that he is an intended third-party beneficiary of the roofing contract between Defendant and GDHR, or that Defendant's actions constituted a breach of its duties under that contract. In addition, Plaintiff has failed to provide evidence that would allow a jury to conclude that he was a third-party beneficiary of the contract based on Restatement Section 324A. Therefore, the Court finds that Defendant is entitled to summary judgment on this claim. As a result, Defendant's Motion for Summary Judgment is **GRANTED** with respect to this claim.

IV.  SUPPLY OF CHATTEL FOR DANGEROUS USE

Lastly, Plaintiff alleges that Defendant, as a supplier of chattel for dangerous use, had a duty to warn Plaintiff of the dangers associated with the use of the lift and the box.  (Doc. 1, Attach. A ¶¶ 45-46.)  Plaintiff points to Georgia courts' use of Restatement (Second) of Torts Section 388, "Chattel Known to be Dangerous for Intended Use," to impose liability upon a supplier of chattel in certain circumstances.[8]

The Georgia Court of Appeals first relied upon Section 388 in Moody v. Martin Motor Co., 76 Ga. App. 456, 46 S.E.2d 197 (1948).  Despite the fact that, since Moody, Georgia courts have mostly applied this Restatement rule to

---

[8]  Restatement (Second) of Torts § 388 provides as follows:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

manufacturers in products liability cases, the Moody court cited Restatement comment c, which states that the rule also "applies to all kinds of bailors." Id. at 460, 46 S.E.2d at 199. Indeed, Section 388 has been applied to determine liability for suppliers other than the original manufacturer of a dangerous product. See, e.g., Dingler v. Moran, 244 Ga. App. 59, 479 S.E.2d 469 (1996); Murphy v. Blue Bird Body Co., 207 Ga. App. 853, 429 S.E.2d 530 (1993); J.C. Lewis Motor Co. v. Williams, 85 Ga. App. 538, 69 S.E.2d 816 (1952).

The facts of Murphy are very similar to the facts at hand, but with some critical differences. In Murphy, the plaintiff's employer, Applied Coating Technologies ("ACT"), was an independent contractor hired to install a paint finishing system at a manufacturing plant owned by the defendant, Blue Bird Body Company. 207 Ga. App. at 853, 429 S.E.2d at 531. On a day when the plant was not in operation, ACT's president entered the plant with the plaintiff, who had been hired to repair a suction fan installed by ACT as part of the paint finishing system. Id. at 854, 429 S.E.2d at 531. When the plaintiff realized he needed to examine the outside of the fan, which was not accessible by stairs, the plaintiff's employer retrieved a

forklift and a parts basket, both owned by the defendant, for the plaintiff to use. Id. at 854, 429 S.E.2d at 532. The plaintiff entered the parts basket with the tools he needed, and his employer raised him to the outside area of the fan. Id. However, the basket was not secured to the forklift and it fell while the plaintiff was working on the fan, injuring the plaintiff. Id.

The Court of Appeals affirmed summary judgment for the defendant, dismissing the plaintiff's claim that the defendant breached a duty to provide safe equipment under Restatement (Second) of Torts § 388. The court found that the plaintiff's reliance on Section 388 was misplaced because the evidence showed that the defendant had no reason to know ACT would use one of its forklifts to lift the plaintiff. Id. at 858, 429 S.E.2d at 534. In addition, the court noted that the defendant never authorized ACT to use its forklift for that purpose. Id.

From this precedent, the Court can only conclude that if the plaintiff in Murphy had been able to show that the defendant, at the time it loaned the equipment, had reason to know the plaintiff's employer might use the lift to raise plaintiff from the floor to the overhead fan, the Court of Appeals would have denied summary judgment. As a basis for

its finding that the defendant in Murphy had no reason to know of ACT's intended use of its equipment, the Court of Appeals pointed out that the defendant and its employees had never seen ACT's crew use the forklift and basket to lift personnel. See id. at 859, 429 S.E.2d at 534-35. Thus, they had no reason to anticipate ACT's use of their equipment in this way.

The Court cannot say that similar facts are present in this case that would entitle Defendant to summary judgment. While Defendant, like the defendant in Murphy, had never seen Mr. Jump or other GRH employees use its lift and box as personnel carriers, Plaintiff has alleged that Defendant's site supervisor, Mr. Catchot, had previously allowed the equipment to be used for this purpose by subcontractors at the GRH jobsite. (Doc. 85 at 34.) A reasonable jury could find, contrary to Defendant's assertion in its Motion for Summary Judgment, that such use by Defendant constituted authorization for subsequent bailees of the equipment to put it to similar use. At the very least, a reasonable jury could find that Defendant's own history of use of the equipment for lifting personnel was enough to give Defendant "reason to anticipate" that Plaintiff's employer might put the equipment to a similar use. Murphy, 207 Ga. App. at

858, 429 S.E.2d at 536. Such a showing would bring the facts of this case within the ambit of Section 388.[9]

To establish Defendant's liability under this rule, however, Plaintiff must also satisfy the requirements of subsection (b) of Section 388. Under this subsection, the supplier of chattel for dangerous use is only liable if he "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." Restatement (Second) of Torts § 388(b). In Dingler, the Georgia Court of Appeals found that the existence of an open and obvious danger in the loaned equipment defeated the plaintiff's claim that he had no reason to realize the dangerous condition of a table saw he borrowed from the

---

[9] The Court notes the fine distinction between the standard of liability for a gratuitous bailor and that of a supplier of chattel for dangerous use. As explained above, Georgia law requires that a gratuitous bailor have actual knowledge of a defect and of the use the bailee intends in order to be liable for a failure to warn. Supra Analysis Section II. However, a supplier of chattel for dangerous use is subject to liability for harm caused by the use of the chattel if the supplier should realize, from facts known to him, that the chattel is dangerous for the uses that he has reason to know are intended by the party to whom the chattel is being supplied. See Murphy, 207 Ga. App. at 857-58, 429 S.E.2d at 534; Restatement (Second) of Torts § 388. Thus, constructive knowledge of danger is sufficient for liability to attach to the supplier of chattel under Restatement § 388, whereas actual knowledge of a defect is required to establish a gratuitous bailor's liability.

defendant. 244 Ga. App. at 60, 479 S.E.2d at 470. Whether the use of a box tied to a forklift to elevate personnel off the ground to operate a chainsaw constitutes an open and obvious danger, such that Plaintiff's cause of action under Section 388 is defeated, is an issue of fact that falls within the province of the jury. Because Plaintiff has presented facts sufficient to allow a jury to conclude that Defendant is liable under Section 388, Defendant's Motion for Summary Judgment as to this claim is **DENIED**.

V.  PLAINTIFF'S ASSUMPTION OF THE RISK

In its Motion for Summary Judgment, Defendant argues that Plaintiff assumed the risk associated with being raised by a boom lift with a wooden box attachment. (Doc. 54 at 40-47.) All reasonable inferences and disputed evidence on this issue must be viewed in favor of Plaintiff, who is the non-moving party. See Snow v. Bellamy Mfg. & Repair, 1995 WL 867859, at *8 (N.D. Ga. Sept. 26, 1995) (unpublished). Furthermore

> [a]s a general proposition, issues of negligence, assumption of risk, contributory negligence and lack of ordinary care for one's own safety in avoiding the consequences of another's negligence and comparative negligence are not susceptible of summary adjudication either for or against the claimant but must be resolved by a jury as a trier of fact.

_Kitchens v. Winter Co. Builders, Inc._, 161 Ga. App. 701, 701, 289 S.E.2d 807, 808 (1982). To establish the defense of assumption of the risk, Georgia courts require a defendant to show

> (1) that the plaintiff had some actual knowledge of the danger; (2) that he understood and appreciated the risk there from, [sic] and (3) that he voluntarily exposed himself to such risk. Stated another way: The doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law he has assumed all risk of injury.

_Gen. Tel. Co. of the S.E. v. Hiers_, 179 Ga. App. 105, 106-7, 345 S.E.2d 652, 654 (1986) (internal citations and quotations omitted).

To establish that Plaintiff understood and appreciated the inherent risks involved with being lifted in the box on the forklift, Defendant points to Plaintiff's training and experience in tree cutting, job site safety, construction, and fall protection. (Doc. 54 at 42.) The Court has carefully considered the deposition testimony of Plaintiff's former employer, Mike Xenos, who personally trained Plaintiff in the aforementioned areas. (Doc. 54 at 43.) The Court has also considered Plaintiff's own deposition

testimony concerning his past job experiences and his account of the circumstances of the incident leading to his injury. (Doc. 49, Attach. 2 at 88-97.)

Defendant has produced ample evidence supporting its assertions that Plaintiff appreciated the risks associated with lifting personnel in the air above six feet without a harness and knew that the forklift with the attached platform was not intended or designed to raise personnel. (Doc. 54 at 42-43.) However, Defendant has not shown that Plaintiff was aware of the specific danger of the box coming unattached from the lift and falling from it. Plaintiff indicated in his deposition testimony that he believed there was no danger associated with getting onto a fixed platform and being hoisted up into the air. (Doc. 49, Attach. 2 at 97.) He also testified that he had seen Defendant use the forklift to hoist personnel up on the roof of one of the GRH buildings (id. at 55-56), and that this was done on prior occasions without incident (id. at 64-65). Plaintiff, therefore, had never witnessed any sort of accident involving the lift or the box, even when used in the same manner that resulted in his injuries. Viewing the facts, then, in the light most favorable to Plaintiff, the Court is unable to conclude that Plaintiff understood and appreciated

the risks associated with being raised by Defendant's equipment.

Furthermore, Defendant has not established Plaintiff's actual knowledge of the danger.

> "Knowledge of the risk is the watchword of assumption of risk," and means both <u>actual</u> and <u>subjective</u> knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.

<u>Vaughn v. Pleasent</u>, 266 Ga. 862, 864, 471 S.E.2d 866, 868 (1996) (quoting <u>Beringuase v. Fogleman Trucklines, Inc.</u>, 200 Ga. App. 822, 824, 409 S.E.2d 524, 526 (1991)). Neither party alleges that Plaintiff was specifically apprised of the danger of the box falling off of the lift. Nor does the record show that Plaintiff actually knew the box could come loose and fall in the way it did. Indeed, as already stated, Plaintiff considered the platform attachment to the lift to be safe for lifting him to cut tree limbs. (Doc. 49, Attach. 2 at 93.) Thus, the evidence does not support Defendant's contention that Plaintiff actually knew of the specific danger that caused his injuries.

Additionally, Defendant has not discharged its burden of production on the issue of whether Plaintiff voluntarily exposed himself to the risk of injury. In fact, Defendant's

Motion for Summary Judgment does not address the voluntariness requirement of assumption of the risk at all. (Doc. 54 at 40-47.) Plaintiff's response, on the other hand, cites case law to support the point that an employee, performing duties of his job, is not necessarily acting voluntarily. See Kitchens, 161 Ga. App. at 703, 289 S.E.2d at 809 ("Any construction worker as a servant and employee has a certain amount of his freedom of choice restricted by the circumstances under which he works and the coercion of seeking to remain employed."). It is undisputed that Plaintiff entered the three-sided box and was raised on the forklift under the direction of his supervisor, Mr. Jump. (Doc. 85 at 12; Doc. 54 at 2.) Thus, whether Plaintiff voluntarily assumed the risk is doubtful. In any event, such a determination is best left to the trier of fact and is not appropriate for summary adjudication. Accordingly, Defendant's Motion for Summary Judgment is **DENIED** with respect its defense of assumption of risk.

## VI.   PLAINTIFF'S FAILURE TO EXERCISE DUE CARE FOR HIS OWN SAFETY

Defendant's Motion for Summary Judgment also sets forth as an affirmative defense Plaintiff's failure to exercise due care for his own safety. (Doc. 54 at 48.) Pursuant to

O.C.G.A. § 51-11-7,[10] such a showing would bar Plaintiff's recovery.   Defendant cites <u>Union Carbide Corp. v. Holton</u>, 136 Ga. App. 726, 222 S.E.2d 105 (1975), for the proposition that a plaintiff's recovery can be precluded, as a matter of law, by his failure to exercise due care for his own safety, even though he claims that he did not appreciate the danger involved and that he was an employee acting under the direction of his supervisor.   (Doc. 54 at 48.)   In <u>Union Carbide</u>, the Georgia Court of Appeals reversed a jury verdict for the plaintiff, observing that "at some point the danger and likelihood of self injury becomes so obvious that actual knowledge by the plaintiff is unnecessary" and that the situation causing the plaintiff's injury was "obviously dangerous." <u>Id.</u> at 731, 222 S.E.2d at 110.

Viewing the facts of this case in the light most favorable to Plaintiff, the Court is unwilling to conclude that the circumstances causing Plaintiff's injury were

---

[10] O.C.G.A. § 51-11-7, "Diligence of Plaintiff," reads as follows:

> If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.

38

obviously dangerous as a matter of law. There is adequate
evidentiary support for the contrary conclusion: Defendant's
own employees raised personnel in the box without incident;
Plaintiff, just prior to incurring his injuries here, had
cut limbs off another tree without any problems; and neither
party had ever previously witnessed any injuries resulting
from this type of use of the equipment. Therefore,
Defendant's motion for summary judgment is **DENIED** with
respect to this defense.

VII. PUNITIVE DAMAGES

Defendant argues that it is entitled to summary
judgment on Plaintiff's request for punitive damages,
arguing that "there is no evidence demonstrating willful
misconduct, malice, fraud, wantonness, oppression, or that
entire want of care that would support any presumption of
conscious indifference to consequences." (Doc. 54 at 39.)
In response, Plaintiff contends that "[t]he extensive
knowledge of the Defendant, that the loaning of the lift for
the intended purpose was inherently dangerous to anyone who
got in same, is almost the definition of conscious
indifference to consequences." (Doc. 85 at 40.)

In order to prevail on a claim for punitive damages,
Plaintiff must demonstrate Defendant's conscious
indifference to their safety. See Hodges v. Effingham Cnty.

39

Hosp. Auth., 182 Ga. App. 173, 175, 355 S.E.2d 104 (1987) (discussing when punitive damages are appropriate). "Negligence alone, even gross negligence, will not support an award of punitive damages." See Lewis v. Suttles Truck Leasing, Inc., 869 F. Supp. 947, 949 (S.D. Ga. 1994) (interpreting Georgia law on "conscious indifference"). Instead, Plaintiffs must be able to " 'prove[] by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.' " Lilliston v. Regions Bank, 288 Ga. App. 241, 246, 653 S.E.2d 306, 311 (2007) (quoting O.C.G.A. § 51-12-5.1).

After careful consideration, the Court finds that there is not sufficient evidence in the record to support an award of punitive damages in this case. Plaintiffs' remaining claim is not based on Defendant's actual knowledge that the boom lift and wooden box were dangerous when used to raise and lower individuals. Rather, Plaintiff's remaining claim is that Defendant should have known both that Mr. Jump intended to use the equipment to raise Plaintiff to cut tree limbs, and that it was dangerous for that use. While Plaintiff has presented sufficient evidence to allow a jury to conclude, by a preponderance of the evidence, that

Defendant should have known both how the equipment was to be used and the dangers posed by that use, Plaintiff has not presented sufficient evidence to prove to a jury, by clear and convincing evidence, that Defendant acted with conscious indifference to the consequences to lending the equipment to Mr. Jump. Accordingly, Defendant's request for summary judgment on Plaintiff's claim for punitive damages is **GRANTED**.

## CONCLUSION

For the foregoing reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may proceed with his claim based on the supply of chattel for dangerous use. (Doc. 1 at 20-21.) However, Plaintiff's remaining claims, including his claim for punitive damages, are **DISMISSED**.

SO ORDERED this _30th_ day of September 2011.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

41